[*General Term, January,* 1873.]

## THE LITTLE MIAMI ELEVATOR COMPANY *v.* THE CITY OF CINCINNATI.

The act of the legislature, passed March 24, 1863, ceded to the city of Cincinnati authority and permission to enter upon, improve, and occupy as a public highway, and for sewerage purposes, the Miami canal, from Broadway to the Ohio river, as owned and held by the state, subject to all outstanding rights or claims with which the grant might conflict; provided that before work should be done by the city, the plan of improvement should be approved of by the board of public works, and that the city should not obstruct the flow of water through the canal, nor destroy or injure the then supply of water for *milling purposes.* Afterward, the board of public works agreed to the plan of improvement, and unconditionally authorized the work to be done below Third street, and the city began and was prosecuting it accordingly; and afterward the board of public works undertook to convey and secure to the plaintiff the use of water power from lock No. 7, *above* Third street, to be transferred and conveyed by a circular conduit to the plaintiff's elevator *below* Third street, and upon the refusal of the city to construct it, the plaintiff procured an injunction to stop the improvement, according to the plan agreed upon with the board of public works.

*Held,* that the board of public works had no power to make such conveyance, and that the city can not be bound by such an incumbrance of the property granted to her by the state.

*That* the only obligation upon the city is not to obstruct the flow of water, nor to destroy or injure the supply of water for *milling purposes,* and that the plaintiff is not a milling corporation; and for every and all other purposes, the water power of the canal was abandoned or ceded by the state to the city, and as no claim for damages could be sustained on that ground against the state, no liability therefor was cast upon the city by the grant to her.

THIS case is reserved here on a demurrer to the petition by the city.

The plaintiff alleges that it is a corporation; that it has erected and is using, at the southeast corner of Front street and Eggleston avenue, a costly and suitable structure for

receiving, storing, and delivering wheat and other grains in connection with railroads and steamboats; that on June 26, 1869, it became the owner of the water power created by the State of Ohio, at lock No. 8 of the Miami canal, between Congress and Front streets, Cincinnati; that prior to May 8, 1861, the state had constructed locks for the descent of water from the basin west of Broadway, at each of which it provided water power, to be used for grist mills and other purposes to which power of that description could be applied. Especially at lock No. 8, there had been provided water power sufficient to drive six pairs of millstones, four feet six inches diameter, capable of converting one hundred bushels of wheat into superfine flour in twenty-four hours—said power to be derived from the level of the canal immediately above, and to be available for eleven months in the year, at least; that on May 8, 1861, there was granted by the governor, in pursuance of the act of the General Assembly of Ohio, to Kent Jarvis and others, a lease of said canal for ten years, with the right to receive the rents for water power, including that at lock No. 8, which was afterward extended for another term of ten years; that the title plaintiff acquired on June 29, 1869, was from the lessees aforesaid and from the board of public works, by deed, conveying all the interest they had in said water power, subject to the stipulations and provisions of the lease from the State of Ohio to Clark Williams, of date March 26, 1836, except that the plaintiff was released and discharged from the payment of rent; that by said conveyance to plaintiff, it had the right of transferring said water power to and using the same upon the lot mentioned at such point as might be designated by the engineer of the board of public works, who would approve only such plan of making head and tail-races by the defendant as should secure to plaintiff the use of such power; that on March 24, 1863, the legislature passed an act which granted to the city the authority and permission to enter upon, improve, and occupy as a public highway, and for sewerage pur-

poses, all of the canal from the east side of Broadway to the Ohio river, as owned and held by the state, subject to all outstanding rights or claims, with which the grant might conflict, provided that before work should be done by the city the plan of improvement should be approved by the board of public works; that said grant should not extend to the revenues derived from the water privileges, which are reserved, and is made upon further condition that the city should not obstruct the flow of water through the canal nor destroy or injure the present supply of water for milling purposes, and should be liable to all damages arising from such obstruction, and the governor was authorized to make a conveyance accordingly; that afterward the grant was made to the defendant, and the plan of improvement was, on December 29, 1863, agreed to by the board of public works, as far as regards its general features, reserving the right to approve or disapprove any details of construction which may in any manner affect the interests of lessees of water power, and that while the work of construction may be commenced at any and all points below Third street, there shall be no work done above Third street until further examination, with a view of settling details; that the defendant, on August 7, 1867, made a contract with John Boyle to construct a sewer from Broadway to the Ohio river, along Eggleston avenue, under the direction and to the satisfaction of the city civil engineer, under which contract Boyle, prior to June 17, 1869, had constructed the larger part of the sewer, and was proceeding to construct a water-way from the point of discharge from lock No. 7, near Third street bridge, to the Ohio river, but so imperfectly and badly devised as to destroy, in effect, the water power at lock No. 8.

The plaintiff avers that on June 17, 1869, the owners of the water power at lock No. 7 obtained an injunction against the defendant, which is still pending, restraining her from constructing the water-way aforesaid; that, relying on these facts, and on the assurance of the board of public works,

that the water power at lock No. 8 would be preserved and protected, the plaintiff purchased the same on June 26, 1869; that some complaints being made to the board of public works, they, on September 18, 1869, made an order requiring a circular conduit of nine feet in diameter, with a flowing cross section of water equal to fifty-five feet, should be constructed from Third street to the river, together with other details; that in case the city and lessees could not agree on a plan, that then the plan might be finally determined by the board, " provided that no plan should be approved that did not secure to plaintiff the use of the power from lock No. 8, as granted by the board;" that under the act of the legislature of April 18, 1870, being an amendment of the municipal code, the city constituted a board of sewerage commissioners, and on June 10, 1870, the plaintiff submitted to said board a proposition of settlement of all controversy, and while it was pending the defendant was proceeding to fill up the space heretofore occupied by the canal, claiming that the contract with Boyle was forfeited, and is proceeding, without any plan being submitted to or approved by the board of public works, or report of sewerage commissioners, to dump dirt upon the sewer along Eggleston avenue, to the depth of thirty feet and forty feet wide, and will run a street upon such space so being filled, and is constructing said Eggleston avenue sewer, from Third street to the Ohio river, of the diameter of six feet only, when, by the order of the board of public works, it should be nine feet, and no provision is made for a tail-race, nor any plan by which the water power of the plaintiff is to be preserved, to the irreparable injury of the plaintiff. The plaintiff prays an injunction, which was granted.

*Pugh & Throop*, for plaintiff.

*Moore, Conner & Warrington*, for defendant.

HAGANS, J. There are two propositions involved in this case, either of which, we think, is sufficient to dispose of the plaintiff's claim, as made in the petition.

It appears that on October 29, 1863, the board of public works approved and accepted the plans of improvement submitted to it, and expressly accepted them without condition so far as they related to that part of the improvement below Third street, and directed the commencement of the work accordingly. Yet, on June 26, 1869, without the consent of the city, the board of public works not only conveyed to the plaintiff the water power it claims, releasing it from all rent, but also assumed to convey the privilege of *transferring and using said power on the lot of the plaintiff, on the southeast corner of Front street and Eggleston avenue,* and to secure the use at that point, which was confirmed by the order of September 18, 1869. This, we think, that board had no power to do. There is nothing in the act of the legislature granting to the city the canal, conferring such a power, or providing in any way for its exercise in favor of lessees. And inasmuch as there is no averment that the city did or has consented to it, she can not be bound by this incumbrance of a property granted to her by the state, attempted to be put on it subsequently.

Again, an examination of the act granting the canal to the city, provides that the city "shall not obstruct the flow of water through said canal, nor destroy nor injure the present supply of water for *milling purposes.*" This is the full extent of her obligation in this respect. Now, the plaintiff is not a milling corporation, nor does it claim the use of its water power for "milling purposes," but to operate an elevator for the purposes named in the petition. The original lease of all these water powers clearly appears to be for *milling purposes* only; but still we have no doubt they might have been used for other purposes. We think, however, that by the act of the legislature granting the canal to the city, the state abandoned the water power for all other purposes than "milling purposes," or it was in-

cluded in the grant to the city. This view excludes the plaintiff's claim from any consideration whatever by the city; and as no claim could be sustained for damages, by reason of such abandonment, against the state, no liability was cast upon the city by the act ceding it to her. And it is not averred that the city is a party to the conveyance to the plaintiff of the water power which it claims. Indeed, the plaintiff took no title to any water power for the purpose of an elevator at all, for it had been abandoned for such a purpose by the state before the conveyance of June 26, 1869, or was ceded to the city. The use of the water, to which it is put by plaintiff, however proper before the grant to the city, was revocable at the pleasure of the state, and being revoked by the grant, could not be revived after it; or, if it was granted to the city, the board of public works had no title to convey.

The case of *Hubbard* v. *City of Toledo*, 21 Ohio St. 379, seems to us decisive of this case; and the demurrer will be sustained, and if the parties desire it, the cause will be remanded to Special Term for further proceedings.